HENRY REED vs. FRANCIS ADAMS & others.

Under *St.* 1855, c. 215, § 38, providing that "no action shall be had or maintained against any sheriff, deputy sheriff, chief of police, or deputy chief of police, or constable, or their assistants, for executing any warrant or order issued under this act [concerning the manufacture and sale of spirituous and intoxicating liquors] by any justice or court competent to try the same; nor shall any action be had or maintained against any officer for seizing, detaining or destroying any intoxicating liquor or the vessels containing it, unless such liquor and vessels were legally kept by the owner thereof," an officer and his assistants cannot justify entering a building and seizing intoxicating liquors and vessels containing the same, which were illegally kept by the owner thereof, unless the officer had, and acted under, a warrant.

TORT. At the trial in the superior court, upon facts which are stated in the opinion, *Lord*, J. ruled that the plaintiff was entitled to recover, and a verdict was returned accordingly; and the defendants alleged exceptions.

*P. C. Bacon*, for the defendants.

*F. H. Dewey*, for the plaintiff.

MERRICK, J. It appears from the bill of exceptions that the defendants entered the shop of the plaintiff, and took and converted to their own use certain intoxicating liquors which the plaintiff there kept for sale, and also certain implements and vessels which he used in keeping and selling the same, in violation of the laws of this commonwealth. The answer of the defendant Adams, admitting that he seized and carried away said liquor, implements and vessels, alleges that he was then and there a deputy sheriff, that said articles, and the building in which they were kept, were common nuisances, and that therefore this action cannot be maintained against him. But, it appearing that he was not then acting under the authority of any warrant, and that in fact he had none in his possession, the presiding judge ruled that upon these facts he had no defence to the action, and a verdict was accordingly returned for the plaintiff. The other defendants attempted to justify their acts upon the ground that they were the servants and in the employment of Adams. It follows, of course, that they could make no defence if he could not.

35 *

The question whether this ruling is correct depends upon the meaning which shall be ascribed to a particular clause in *St.* 1855, *c.* 215, § 38. That provision is in these words : " Nor shall any action be had or maintained against any officer for seizing, detaining or destroying any intoxicating liquor, or the vessels containing it, unless such liquor and vessels were legally kept by the owner thereof." If this provision stood alone, or were to be considered without regard to other parts of the statute, it would be sufficient to sustain the position assumed by the de-fendants. But it follows after and is directly connected with the further provision, by which it is essentially modified and con-trolled, that " no action shall be had or maintained against any sheriff, deputy sheriff, chief of police, or deputy chief of police, or constable, or their assistants, for executing any warrant or order issued under this act by any justice or court competent to try the same."

The whole statute is a carefully prepared system for regu-lating the keeping and sale of intoxicating liquors. It imposes various duties upon these several enumerated civil officers, for the neglect of which they are made subject to prescribed penal-ties. By § 25 they are required, in the service of a warrant, issued by any justice of the peace or police court having juris-diction to try criminal offences, for that purpose, to seize the liquor named in it, and alleged to be kept or deposited in any store, shop or warehouse, or in any steamboat or other vessel, or in any vehicle of any kind, and intended to be sold in this com-monwealth without legal authority therefor ; and having seized such liquor, together with the vessels in which it is contained, the same securely to keep until final action be had on the process relative thereto. And by § 27, if the liquor so seized shall after-wards be duly adjudged to be forfeited, and any part of it is, in the opinion of said court or justice, suitable for use for medici-nal, chemical or mechanical purposes, such part shall be deliv-ered by the officer to some duly appointed agent for the sale of spirituous liquors ; and the residue thereof, or all of it if no part shall be in the opinion of said court or justice suitable for said purposes, he shall destroy in the presence of the court or justice,

or of such person as they shall appoint to witness its destruction. In addition to these provisions prescribing the duty of officers in their action under judicial warrants, all such officers are authorized by § 13 to arrest, without a warrant, any person whom they may find in the act of illegally selling, transporting or distributing intoxicating liquors, and may seize the liquors, vessels and implements of sale in his possession, and may detain the person and property until complaint can be made, and due processes of law obtained. And it is further made their especial duty to enforce or cause to be enforced all the penalties provided in the act against every person who shall be guilty of any violation thereof of which they can obtain reasonable proof. And again, by § 31, it is made their duty, whenever they shall have information that any intoxicating liquors are kept or sold in any tent, shanty, hut, booth, stall or similar place for selling refreshments, in any public place on or near the grounds of any cattle show, agricultural exhibition, military muster, or any public occasion, without warrant, to seize such liquor and the vessels containing it, and to arrest the keeper or keepers of such place and take them forthwith before some justice of the peace or police court, and there to make complaint for the arrest and trial of such persons, and for the seizure and confiscation of such liquors.

These various requirements impose upon civil officers many and weighty obligations. In the discharge of their duties under this act, they are liable, even when acting with the utmost caution and with perfect good faith, to fall into error, and thus to incur very serious responsibilities. But so important was it regarded by the legislature that there should be no failure in the administration of justice upon this subject, that it was not left to civil officers to determine in their own discretion whether they would be active agents in the execution of the law, and the duty, the performance of which was required, was imposed imperatively upon them. And it is manifestly in view of these liabilities, and of the rules established for the rigid enforcement of the law, as well as to secure vigilance and activity in its execution, that the legislature deemed it expedient, as it is

just and reasonable, that all officers should be protected and indemnified against losses incurred in the performance of their duty or in the exercise of the authority with which they were invested. The provisions of § 38 were evidently adopted for this purpose, and are sufficient to effect it. No action shall be had or maintained against an officer for any part of his proceedings under a lawful warrant, or for any act he shall do in the seizure of liquor or the arrest of a supposed offender in any of those designated cases in which he is authorized or required to act without one. Each part and clause of this section refers equally to the various provisions which precede it, and which show the reason and occasion for the indemnity intended to be afforded, the extent to which it was to reach, and the limitation to which it was to be restricted. The limitation is the same in both cases; namely, protection against the consequences of all those acts, and of those only, which, whether done under or without a warrant, are done under the authority, permission or requirement of the statute.

This conclusion, which results from a comparison of all parts of the statute with each other, and giving to every provision its apparently intended effect, is strengthened and confirmed by more general considerations. It cannot be supposed, in the absence of any express or implied permission, that the legislature intended to authorize civil officers, in all places and under all circumstances, to search for and seize intoxicating liquors kept for the purpose of illegal sale. It certainly has not done so; but on the contrary has named the particular instances, as when it is illegally sold, transported or distributed, or kept and sold in shanties, near grounds, and on public occasions, that liquor may be seized by an officer and taken away from its owner without a warrant. And this enumeration of particular instances, according to a well settled rule of construction, necessarily excludes all others. But when it is considered, that immunity from all unreasonable searches and seizures both of the person and property of the citizen is a constitutional right, and that intoxicating liquors, though liable in their misuse to cause the most mischievous effects, are still to be regarded as property, as they are

in very many of the provisions of this statute, and when the legislature has specified with precision particular cases in which seizures of such property may be made without a warrant, the indemnity provided in § 38, cannot, without giving undue and unwarrantable force to the general terms in which it is expressed, be construed as extending to other cases, in respect to which no authority has been conferred or permission given.

A majority of the court are therefore, for these reasons, of opinion that the ruling of the presiding judge was correct, and that the exceptions taken by the defendant must be overruled.*

* The same question arose in Suffolk County, in November 1861, in the case of EDWARD V. BROWN *v.* TEMPLE DODGE & others, in which a similar decision was made for the same reasons.